IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| v. | § | Criminal Action No. **3:17-CR-669-L** |
| | § | |
| **JOHN LEWIS DAVIS II (2)** | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant's Motion to Revoke Detention Order ("Motion") (Doc. 157), filed March 28, 2019. Defendant John Lewis Davis II ("Defendant" or "Davis") moves, pursuant to 18 U.S.C. § 3145(b), for the court to review the detention order entered by the magistrate judge. After considering the Motion, the Government's response in opposition, the magistrate judge's Detention Order, and record, the court **denies** Defendant's Motion to Revoke Detention Order (Doc. 157) and **affirms** the Detention Order entered by the magistrate judge (Doc. 153).

## I.      Procedural Background

Davis is charged with conspiracy to commit wire, mail, and bank fraud; conspiracy to commit money laundering; possession and transmission of counterfeit money orders; and transfer of counterfeit driver's licenses in violation of federal law. He was originally released on bond with pretrial supervision and court-ordered conditions of release. The Government, however, moved on February 26, 2019, to revoke his pretrial release. A hearing on the motion was conducted by the magistrate judge on March 6, 2019, after which Davis was ordered detained pending trial, based on the magistrate judge's determination that he had: (1) committed a crime by stating under penalty of perjury that he needed a duplicate Illinois driver's license because it was lost, rather than seized by law enforcement in Texas; and (2) this conduct also violated his conditions of pretrial release,

including the condition that he "must not violate federal, state, or local law while on release." March 6, 2019 Detention Order 1-2 (quoting Order Setting Conditions of Release 1-2 (Doc. 15)). In addition, the magistrate judge determined that Davis violated a condition of release that required him to "avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or Prosecution, including: Co-defendants," when he admittedly had contact with Codefendant Rasheed Wriden on February 22, 2019, and continued to have contact with him in person and through text messages. *Id.* The magistrate judge further determined that Davis was unlikely to abide by any pretrial release conditions imposed and, therefore, revoked his pretrial release and ordered him detained pending trial. In support, the magistrate judge made the following factual and legal determinations:

At the hearing, the government presented testimony that at the time of Defendant's arrest in January 2018, law enforcement officers who were executing a search warrant at his residence seized 35 driver's licenses from the trunk of a vehicle. They also seized what appeared to be a valid Illinois driver's license from Defendant's office. In July 2018, Defendant was allowed to travel to the State of Illinois for a wedding. While there, he submitted an application for an Illinois driver's license that was signed under penalty of perjury. In response to the question regarding the reason he was requesting a duplicate license, he wrote, "dup/lost." When asked by his pretrial services officer if he conducted any business while in Illinois, he said no.

The government also presented testimony that at Defendant's intake interview with his pretrial services officer, he told the officer that he considered co-defendant Rasheed Wriden a member of his family. The officer told him that the order setting conditions did not allow him to have contact with Mr. Wriden, and that his attorney would need to file a motion to modify the conditions if he wanted to have contact with him. On February 15, 2019, a U.S. Postal Inspector observed a co-defendant's vehicle parked at Defendant's residence and communicated this information to the pretrial services officer. When asked about it on February 22, 2019, Defendant confirmed that he had contact with Mr. Wriden on that day and continued to have contact with him through text and in person because he was Mr. Wriden's mother's pastor and considered her to be family, and she had been ill and had passed away on February 21, 2018. He told the officer that he would continue to communicate with Mr. Wriden as he prepared for her funeral and assisted in caring for Mr. Wriden's sister, as his mother had requested. The officer reminded him that the order setting

conditions did not permit the contact, and his attorney would have to petition the court for a modification.

. . .

       The Court finds under § 3148(b)(1)(A) that there is probable cause to believe that Defendant committed a crime by stating under penalty of perjury that he needed a duplicate driver's license because it was lost, rather than because it had been seized by law enforcement agents in Texas. It also finds under § 3148(b)(1)(B) that there is clear and convincing evidence that Defendant violated his conditions of pretrial release by having direct contact with a codefendant.

       Under § 3148(b)(2)(B), the Court also finds that Defendant is unlikely to abide by any condition or combination of conditions of release. Defendant was placed on supervised pretrial release on January 18, 2017. He signed the Order Setting Conditions to show his understanding of his conditions and the penalties for not following the conditions, and he expressly stated on the record that he understood the consequences of failing to comply with the order. He did not disclose his relationship with the co-defendant to the Court at the time the conditions of release were imposed or seek a modification of those conditions, even though he was advised by the pretrial services officer that day that he would need to seek a modification in order to have contact. He did not seek to have law enforcement agents return his valid Illinois driver's license. He did not ask his pretrial services officer about the advisability of obtaining a replacement license or disclose that he planned to seek a replacement license while in Illinois for a wedding, and he denied conducting any business in Illinois when asked, even though obtaining a new license was not a wedding activity. Although Mr. Wriden's mother's death was an exigent circumstance, Defendant was aware of the no contact condition and made no effort to advise his pretrial services officer of the need for contact prior to being confronted about it. Significantly, he told the officer that he was going to continue to have contact with the co-defendant after being confronted despite being reminded that it was not permitted by the order. For these reasons, the Court cannot find that Defendant will now begin complying with his conditions of release.

March 6, 2019 Detention Order 2-4 (Doc. 153).

## II. Discussion

       Davis contends that the magistrate judge's order revoking his pretrial release is based on

unconstitutional considerations and ignores the holding in *United States v. Jackson*, 845 F.2d 1262,

1266 (5th Cir. 1988), and the "overwhelming evidence" he presented during the hearing that

demonstrates he is not a flight risk and does not represent a danger to the community. Defendant,

therefore, argues that he rebutted the presumption under *Jackson*. In addition, he maintains that the

court can set conditions that will reasonably assure his appearance and the safety of the community.

Section 3148(b) provides that a "judicial officer *shall* enter an order of revocation and

detention if, after a hearing, the judicial officer":

(1) finds that there is

> (A) probable cause to believe that the person has committed a Federal, State,
> or local crime while on release; or

> (B) clear and convincing evidence that the person has violated any other
> condition of release; and

(2) finds that

> (A) based on the factors set forth in section 3142(g) of this title, there is no
> condition or combination of conditions of release that will assure that the
> person will not flee or pose a danger to the safety of any other person or the
> community; ***or***

> (B) the person is unlikely to abide by any condition or combination of
> conditions
> of release.

18 U.S.C. § 3145(b)(1)-(2) (emphasis added). A "finding that a defendant will not abide by any

conditions of release may be established by a preponderance of the evidence." *United States v. Aron*,

904 F.2d 221, 224 (5th Cir.1990) (citations and quotation marks omitted). As explained by the Fifth

Circuit in *United States v. Minor*, 204 F. App'x 453 (5th Cir. 2006) (per curiam):

> The statute clearly provides that these findings alone [that a defendant will not abide
> by any conditions of release] are sufficient to justify revocation and detention; a court
> need not also find that the defendant will flee or pose a danger to the community. *See*
> 18 U.S.C. § 3148(b)(setting out required findings in the disjunctive); *see also Aron*,
> 904 F.2d at 224 (noting that the district court had relied on a finding that the

defendant was unlikely to abide by conditions of release, "rather than upon the presumption that" he would pose a danger to the community).

*Id.* at 454-55.

Revocation of Defendant's pretrial supervision was expressly based on the magistrate judge's finding under § 3148(b)(2)(B) that "[he] is unlikely to abide by any condition or combination of conditions of release." March 6, 2019 Detention Order 3-4. As the magistrate judge's revocation determination was based on § 3148(b)(2)(B), the issue of whether, under § 3148(b)(2)(A), there are any conditions of release that will assure that Defendant will not flee or pose a danger to the safety of any other person or the community, is quite beside the point because the magistrate judge's findings under § 3148(b)(2)(B) alone are sufficient to justify revocation and detention without the need for additional findings under § 3148(b)(2)(A). *Minor*, 204 F. App'x at 454-55.

Defendant contends that he was not conspiring with Codefendant Wriden during their contact to commit crimes; he was only helping the Wriden family in his capacity as a church minister to make funeral arrangements, and the Government knew this. The Detention Order acknowledges the circumstances surrounding the unexpected death of Codefendant Wriden's mother. Defendant's conditions of release preclude him from having *any* contact with any Codefendant in this case for *any* reason. Thus, Defendant's reasons for having contact with Mr. Wriden and the Government's awareness of his reasons for contacting Mr. Wriden are irrelevant in that neither did away with the condition of release or obviated the need for Defendant to obtain authorization before contacting Mr. Wriden.

Further, the evidence detailed in the Detention Order establishes that Defendant had contact with Mr. Wriden even though he knew and understood that the conditions of release imposed by the

court precluded him from doing so. He also understood the consequences for failing to abide by the conditions. Additionally, Defendant was specifically told not to have contact with Codefendant Wriden, and he was aware that his attorney would need to seek authorization or a modification of the conditions if he wanted to have contact with Mr. Wriden. Defendant, however, did not seek or obtain authorization before contacting Mr. Wriden multiple times. Even after being confronted and reminded that such contact was not permitted, Defendant indicated he was going to continue to have contact with Mr. Wriden.

Additionally, Defendant falsely stated on an Illinois driver's license application that he was applying for a new license because he lost his old license, when he knew that his old Illinois license had been seized by Texas law enforcement, not lost. When asked if he had conducted any business in Illinois while there to attend a wedding, Defendant lied to probation and failed to disclose that he had applied for an Illinois driver's license. Defendant knew and understood how to seek court approval to modify his conditions of release, as he had previously done so in May 2018, before traveling to Chicago, Illinois, for the purpose of attending a family wedding. *See* Docs. 76 & 78.

Defendant contends that his conditions of release do not preclude him from obtaining a replacement driver's license. This argument, however, misses the point. Defendant lied under oath about his reasons for applying for a replacement driver's license. Defendant's conditions of release also expressly restricted him from traveling outside the Northern District of Texas. Knowing this, Defendant filed a motion seeking authorization to travel to Illinois to attend a family wedding. The magistrate judge's order granting the motion states as follows:

> The defendant's conditions of release are hereby modified to allow him to travel outside of the Northern District of Texas only with advance written approval

of the USPPSO, after it has verified the defendant's employment and any "business engagement" for which he seeks leave to travel, or any personal reason or event for which he seeks leave to travel. In order that it may do so, the defendant shall provide the USPPSO and the government his proposed itinerary with dates of travel, mode of travel (including travel booking information), names of individuals with which the defendant is going to meet, dates and times of meetings, contact information for these individuals, and a name, address, and phone for number for lodging **at least 21 days before his requested travel**. All other terms and conditions of the Order Setting Conditions of Pretrial-Release, filed January 18, 2018 (doc. 15), remain in full force and effect.

May 16, 2018 Order (Doc. 78). The foregoing original condition and this modification make clear that prior authorization to travel outside the Northern District of Texas *and* verification of Defendant's reasons for wanting to travel outside the Northern District of Texas were prerequisites to such travel.

Going to the Illinois Department of Transportation and applying for a replacement driver's license is not a wedding activity. If Defendant's intention all along was to travel to Illinois to obtain a replacement license, he should have disclosed this when he sought permission to travel outside the Northern District of Texas. Additionally, if Defendant believed that his conduct in going to the Illinois Department of Transportation and applying for a replacement license while in Illinois did not violate his conditions of release, he should have had no reason to conceal such conduct when asked by the pretrial services officer whether he had conducted any business in Illinois. He should have also disclosed on his Illinois replacement driver's license application that his old license had been seized by Texas law enforcement, rather than lost.

Thus, the record supports the magistrate judge's determination that Defendant not only violated his conditions of release, but did so knowingly and attempted to conceal certain conduct after the fact. In light of these violations and evidence regarding Defendant's deceit with respect to

his conduct in Illinois, his cavalier disregard for the court-ordered conditions of release, and his stated intent to continue having contact with Codefendant Wriden in violation of his conditions of release, even after being confronted, the court agrees with the magistrate judge's determination that he would be unlikely to abide by any condition or combination of conditions of release and determines that such a determination is supported by a preponderance of the evidence.

Defendant also objects to the magistrate judge's consideration of hearsay evidence. The rules of evidence, however, do not apply in detention proceedings. *United States v. Trosper*, 809 F.2d 1107, 1111 (5th Cir. 1987) ("This testimony is, of course, hearsay, but is admissible in a detention hearing."); *see also United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985) (explaining that the Bail Reform Act "expressly provides that '[t]he rules concerning admissibility of *evidence* in criminal trials do not apply to the presentation and consideration of information at the hearing.' § 3142(f) (emphasis added). This implies that the judicial officer can rely on matters brought out at the hearing which would not be considered as 'evidence' under traditional trial standards. Hence, merely because the information adduced at the hearing may be hearsay of the kind that would be inadmissible at a trial, does not necessarily mean that such information cannot form the basis for a pretrial detention determination.").

## III. Conclusion

The court **concludes**, for the reasons herein explained and found by the magistrate judge, that the record in this case supports the order revoking Defendant's pretrial release under 18 U.S.C. § 3148(b). The court, therefore, **denies** Defendant's Motion to Revoke Detention Order (Doc. 157) and **affirms** the Detention Order (Doc. 153).

**It is so ordered** this 13th day of February, 2020.

Sam A. Lindsay
United States District Judge